# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

EMMANUEL SANCHEZ OSORIO,

Petitioner,

vs.

TODD BLANCHE, *et al.*,[1]

Respondents.

Case No.: 2:26-cv-00588-GMN-MDC

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Emmanuel Sanchez Osorio's[2] Amended Petition for Writ of Habeas Corpus, (ECF No. 7).  Federal Respondents Michael Bernacke, Pam Bondi, and Kristi Noem ("Federal Respondents") filed a Response, (ECF No. 9),[3] to which Petitioner filed a Reply, (ECF No. 11).[4]  Because Petitioner's mandatory detention violates his due process rights, the Court GRANTS the Petition and orders Federal Respondents to provide Petitioner with a constitutionally adequate bond hearing within seven days of this Order.

## I.    BACKGROUND

Petitioner Emmanuel Sanchez Osorio is a citizen of Mexico. (Am. Pet. 1:18, ECF No. 7). He has been living in the United States since at least 2010, when he entered without inspection. (*Id.* 1:19–20); (I-213 at 2, Ex. A to Fed. Resp., ECF No. 9-1).[5]  In December 2025, Petitioner's

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted or currently named Kristi Noem.  The Clerk of Court is kindly directed to update the docket to reflect these substitutions.

[2] The Amended Petition clarifies the correct order of Petitioner's name.  The Clerk of Court is kindly directed to update the docket and caption to reflect Petitioner's corrected name as included in the Amended Petition.

[3] Respondent John Mattos also filed a Response, (ECF No. 20), indicating that he has no independent authority to release Petitioner, and thus takes no position on the relief sought.

[4] Petitioner also filed a Supplement to the Amended Petition, (ECF No. 12).

[5] The Court notes that the 1-213 indicates that Petitioner has a pending application for a U visa. (I-213 at 2, Ex. A to Fed. Resp.).  On May 20, 2026, a federal district court certified a class of individuals with pending U-visa

construction company was hired as a subcontractor by Mountain View Construction. According to Petitioner, the owner of Mountain View Construction owes him almost $4,000 in unpaid wages, fuel, and other expenses for work Petitioner completed. (Police Report at 4, Ex. 1 to Am. Pet., ECF No. 7-1).  Per the police report, after the owner denied owing him any money, Petitioner informed him that he would be holding onto several of his tools until the owner paid him what he was owed. (*Id.* at 4).  The owner of Mountain View Construction called the police, and Petitioner was then arrested on December 29, 2025, in Rigby, Idaho. (*Id.* at 1).  He was charged with felony Grand Theft. (*Id.*).  All tools were ultimately returned to the owner of Mountain View Construction. (*Id.* at 2).  Petitioner was ordered released on bail but was transferred to ICE custody on January 2, 2026. (Am. Pet. 2: 18–20); (Notice to Appear ("NTA") at 1, Ex. A to Fed. Resp., ECF No. 9-1).  He has been detained at the Nevada Southern Detention Center for over five months.

On February 22, 2026, Petitioner requested a custody determination. (Immigration Judge ("IJ") Order, Ex. A to Fed Resp., ECF No. 9-1).  The IJ denied the request because he lacked jurisdiction under *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). (*Id.* at 1).  In the alternative, the IJ found that Petitioner is subject to mandatory custody under the Laken Riley Act based on his arrest for the grand theft charge in Idaho. (*Id.*).  With this Petition, Petitioner challenges the constitutionality of his mandatory detention and seeks a constitutionally adequate bond hearing.

///

///

applications (among others) and issued a preliminary injunction staying DHS's 2025 guidance rescinding its prior policy of requiring ICE to refrain from pursuing removal against persons with pending U visa petition. *See generally Immigr. Ctr. for Women & Child. v. Noem*, No. 2:25-CV-09848-AB-AS, 2026 WL 1455004 (C.D. Cal. May 20, 2026).  This stay of DHS's 2025 guidance applies to all class members regardless of geographic location. *Id.* at *46.  Without briefing from the parties on this issue, the Court takes no position on the impact of Petitioner's pending U visa application on Petitioner's detention or removal proceedings.

## II.  LEGAL STANDARD

### A.  Habeas Petitions

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### B.  Statutory Detention Scheme

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, two statutory provisions generally govern the government's authority to civil detain noncitizens during the pendency of removal proceedings: 8 U.S.C. §§ 1225(b) and 1226.  In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Supreme Court explained that § 1225 generally governs "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Id.* at 287.  In contrast, § 1226 "generally governs the process of arresting and detaining" noncitizens already "inside the United States." *Id.* at 288.

8 U.S.C. § 1225 authorizes the government to detain certain noncitizens seeking admission into the United States. *See Jennings*, 583 U.S. at 289.  Section 1225(b) applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1).

"[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287.

Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing § 1225(b)(1)(A)(i)). Noncitizens who fall under § 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id.* Applicants for admission under either § 1225(b)(1) or § 1225(b)(2) are subject to mandatory detention. Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit." *Id.* § 1182(d)(5)(A); *Jennings*, 583 U.S. at 287.

8 U.S.C § 1226 governs detention of noncitizens who are already present in the United States but are subject to full, standard removal proceedings. *See Jennings*, 583 U.S. at 288–89 ("U.S. immigration law authorizes the Government to detain . . . certain [noncitizens] *already in* the country pending the outcome of removal proceedings under §§ 1226(a) and (c)"). Section 1226 "distinguishes between two different categories of [noncitizens]." *Id.* at 288. Noncitizens under § 1226(a) are subject to discretionary detention, while noncitizens under § 1226(c) are subject to mandatory detention. *Id.* at 288–89.

III. **DISCUSSION**

Petitioner has been in ICE custody for approximately five months without a bond hearing while in removal proceedings. He argues that he cannot legally be subject to mandatory detention under 8 U.S.C. § 1225(b)(2), (Am. Pet. 5:14–7:17), and that mandatory detention under 8 U.S.C. § 1226(c) is unconstitutional as applied to him, (*Id.* 7:18–15:2).

Federal Respondents assert that Petitioner is properly detained under both §§ 1225(b)(2) and 1226(c). (Fed. Resp. 2:10–6:24, ECF No. 9).

**A.  Section 1225(b)**

Federal Respondents assert that 8 U.S.C. § 1225(b), rather than § 1226(a), governs Petitioner's detention and requires his detention without a bond hearing.  As described above, detention of noncitizens is governed by 8 U.S.C. §§ 1225–26.  Section 1226(a) provides the "default rule," allowing discretionary detention of noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).  In *Jennings*, the Supreme Court drew a clear line between the two provisions: § 1225 "applies primarily to [noncitizens] seeking entry into the United States," while § 1226 governs "the process of arresting and detaining" noncitizens "already in the country." *Id.* at 287–88.  Applicants for admission are generally subject to mandatory detention under § 1225(b) and may be released only on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 287.  The Ninth Circuit has also described § 1226 as "provid[ing] the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).

Here, Federal Respondents rely on nonbinding, out-of-circuit authority to argue that because Petitioner is an "applicant for admission" as defined in 1225(a), he is therefore "seeking admission" within the meaning of § 1225(b)(2)(A) and must be detained pending removal proceedings. (Fed. Resp. 8:12–16:19).  Courts in this District, including this Court, have consistently rejected this argument.

Moreover, Federal Respondents' argument that Petitioner is an "arriving" noncitizen conflicts with the DHS's own NTA. (NTA, Ex. A to Fed. Resp.).  The NTA charges Petitioner as a noncitizen "present in the United States without being admitted or paroled." (*Id.*).  This makes logical sense, because Petitioner has been present in the United States for at least 16

years.  Nothing in the record supports treating Petitioner as a noncitizen seeking admission subject to § 1225(b)'s mandatory detention scheme.  Thus, the Court concludes that Petitioner's detention is not governed by § 1225(b).

**B.  Section 1226(c)**

The IJ previously denied Petitioner's request for a bond hearing after finding he was subject to mandatory custody under the Laken Riley Act due to his arrest for the offense of Grand Theft. (IJ Order at 1, Ex. A to Fed Resp.).  Petitioner argues that such an application of § 1226(c) is unconstitutional as applied to him. (Am. Pet. 9:5–9).  Federal Respondents do not respond to Petitioner's argument that his detention without bond violates his due process rights and thus concede the merits of Petitioner's challenge. *See, e.g.*, *Pernell v. City of Los Angeles*, 650 F. Supp. 3d 910, 933 (C.D. Cal. 2022) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").  The Court nevertheless analyzes the *Mathews* factors to determine whether Petitioner is entitled to a bond hearing.

Section 1226(c) provides that detention is mandatory for certain nonresidents.  Prior to the recent amendment, § 1226(c) provided that DHS "shall take into custody" nonresidents who "hav[e] committed" certain enumerated offenses, *see* 8 U.S.C. § 1226(c)(1)(A)–(b), have "been sentence[d] to a term of imprisonment for at least 1 year" for certain enumerated offenses, *id.* § 1226(c)(1)(C), or who are members or participants in terrorist activities or organizations, *id.* § 1226(c)(1)(D).  In such cases, the Supreme Court has found that detention without a bond hearing is justified "for the brief period necessary for [the nonciziten's] removal proceedings." *Demore*, 538 U.S. at 513.

The Laken Riley Act, Pub. L. 119-1, 139 Stat. 3 (2025), added a new subparagraph: 8 U.S.C. § 1226(c)(1)(E).  That new subparagraph makes detention mandatory for noncitizens who satisfy two conditions: (1) the noncitizen must be "inadmissible under paragraph (6)(A),

(6)(C), of (7) of section 1182(a) of this title,"[6] and (2) must "[be] charged with, . . . arrested for . . . convicted of, admit[] having committed, or admit[] committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or" certain violent offenses. 8 U.S.C. § 1226(c)(1)(E). Detention is mandatory under the Laken Riley Act, even if a noncitizen has not been convicted of the enumerated offenses.

The IJ found that the Laken Riley Act applies because Petitioner was arrested for felony Grand Theft in the state of Idaho. (IJ Order at 1, Ex. A to Fed. Resp.). The parties agree that the charge remains pending. Petitioner argues, however, that the facts underlying Petitioner's Grand Theft charge demonstrate there is no evidence to find that Petitioner is a danger or a flight risk. (Am. Pet. 9:10–22). Because immigration detention is justified only when a noncitizen presents a risk of flight or danger to the community, *see Zadvydas*, 533 U.S. at 690, Petitioner argues that he cannot be mandatorily detained where there is no evidence that he presents either of those risks. Based on the *Mathews v. Elridge* analysis below, the Court agrees.

### 1. Due Process

Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Though noncitizens do not enjoy constitutional protections outside the borders of the United States, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Thus, "[i]t is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation

---

[6] Those grounds of inadmissibility are: "presen[ce] in the United States without being admitted or paroled," 8 U.S.C. § 1182(a)(6)(A)(i); "seek[ing] to procure . . . a visa, other documentation, or admission into the United States" by fraud or misrepresentation, *id.* § 1182(a)(6)(C)(i); and failure to possess "a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter," *id.* § 1182(a)(7)(A)(i)(I).

proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).  But the "recognized liberty interests of U.S. citizens and [noncitizens] are not coextensive: the Supreme Court has 'firmly and repeatedly endorsed the proposition that Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (quoting *Demore*, 538 U.S. at 522).

As an initial matter, the Court finds that a petitioner may bring an as-applied constitutional challenge to the application of § 1226(c). *Nielsen v. Preap*, 586 U.S. 392, 420 (2019) ("Our decision today on the meaning of [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute . . . .").  To determine whether detention violates due process, courts apply the three-part test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz*, 53 F.4th at 1203–07 ("Ultimately, *Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context.").[7]  Under *Mathews*, "identification of the specific dictates of due process generally requires consideration of three distinct factors": (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

---

[7] The Ninth Circuit in *Rodriguez Diaz* "assumed without deciding" that the *Mathews* test applies in due process challenges to immigration detention. 53 F.4th at 1207.  However, the *Rodriguez Diaz* court noted that other circuits have applied *Mathews* in considering due process challenges to immigration detention. *Id.* at 1204–05 (citing *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020)).  The court also explained that the Ninth Circuit has regularly applied *Mathews* in due process challenges to removal proceedings. *Id.* at 1206 (citing *Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004).  Accordingly, the Court will apply the *Mathews* test here.

First, the private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention." *Hamdi*, 542 U.S. at 529; *see also Rodriguez Diaz*, 53 F.4th at 1207 ("[A]n individual's private interest in freedom from prolonged detention is unquestionably substantial.").  Further, Petitioner's private interest is not diminished by a final order of removal, nor by having already been afforded process such as an individualized bond hearing. *See id.* at 1208 (finding petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing, and had additional process available to him through additional bond hearing upon a showing of materially changed circumstances).

Second, the risk of erroneous deprivation of Petitioner's liberty is also high, especially given Petitioner has likely not received any hearing, either pre- or post-detention.  There is no evidence that "*any* procedure is currently available for Petitioner to challenge the lawfulness of his detention under § 1226(c)." *E.C. v. Noem*, No. 2:25-cv-01789-RFB-BNW, 2025 WL 2916264, at *10 (D. Nev. Oct. 14, 2025).  Petitioner's request for a bond hearing has already been denied by an IJ partially because the Laken Riley Act mandates his detention without a bond hearing.

Petitioner also has no process available to him on his criminal charges while he is in ICE detention.  The Supreme Court has previously addressed the constitutionality of § 1226(c) in *Demore*, 538 U.S. 510.  There, the Court upheld the constitutionality of a mandatory detention procedure as "applie[d] to a class of noncitizens who had already been convicted (beyond a reasonable doubt) of committing certain serious crimes." *Hernandez-Lara v. Lyons*, 10 F. 4th 19, 35 (1st Cir. 2021).  This holding specifically addressed the due process rights of individuals whose convictions "were obtained following the full procedural protections our criminal justice system offers." *Demore*, 538 U.S. at 513.  Here, in contrast, § 1226(c) as amended by the Laken Riley Act and applied to Petitioner would mandate his detention even though the

procedural protections of our criminal justice system have not been available to him.  Indeed, he has been unable to appear in court and defend himself in his criminal case because he has been detained by ICE.  Whereas the *Demore* court's holding regarded individuals who have been given the full procedural protections of our criminal justice system, the same is not true here.

"While it is not the province of this Court to make a finding as to whether [Petitioner] is a flight risk or poses a danger to the community" in the first instance, the Court determines that "the record is abound with evidence that would support such a finding by the [IJ]." *Perera v. Jennings*, No. 21-CV-04136-BLF, 2021 WL 2400981, at *4 (N.D. Cal. June 11, 2021).  The factual background of Petitioner's grand theft charge (the sole basis of his mandatory detention under the Laken Riley Act) does not suggest a higher propensity for danger or flight.  According to the police report, Petitioner took several construction items belonging to the company he was doing contracted work for because Petitioner asserted the owner of the company owed him $3,975 in wages for previous jobs. (Police Report at 4, Ex. 1 to Am. Pet., ECF No. 7-1).  Petitioner informed the owner that he would return the items he took once the owner gave him the money he was owed. (*Id.*).  Petitioner was cooperative with the police, informing them that he needed to be paid his wages because he had 6 children, including a three-month old, and he did not "have enough money to pay for diapers or milk for the youngest." (*Id.*).  The description of Petitioner's actions in the police report demonstrates that, while misguided, the behavior underlying the criminal charge does not raise an inherent concern that Petitioner poses a danger or flight risk.  Moreover, Petitioner financially supports his partner and 6 children in Utah and has lived and worked in the United States for at least 16 years without a criminal conviction. (Am. Pet. 12:22–13:6).  However, to date, no neutral decisionmaker has considered and weighed this evidence.  On this record, the risk of erroneous deprivation is substantial absent a neutral decisionmaker's review.  "That there is no remotely

certain end in sight to [Petitioner's] custody only raises the risk of erroneous deprivation." *Perera*, 2021 WL 2400981, at *4.

The final factor of the *Mathews* test considers the "government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. But Respondents have not explained how detaining Petitioner without due process serves these interests. In fact, limiting detention to noncitizens who are shown to be dangerous or a flight risk may serve the government's and the public's interest by limiting "the fiscal and administrative burdens attendant to immigration detention." *E.C.*, 2025 WL 2916264, at *11; *see also Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (noting that in 2017 "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

On balance, the *Mathews* factors weigh in favor of Petitioner, and the Court therefore finds that Petitioner's detention under § 1226(c) with a bond hearing violates his due process rights.

### 2. Scope of Relief

Based on the above analysis, Petitioner has been unlawfully detained without a bond hearing for over five months. Consistent with its broad equitable authority to fashion a remedy for unlawful detention "as law and justice require," the Court orders Respondents to provide a constitutionally adequate bond hearing with seven days or immediately release him from custody on his own recognizance with no substantial constraints on his liberty. *See Sanders v.*

*Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]") (internal quotation marks and citations omitted).  At the bond hearing, the government will bear the burden of proving by clear and convincing evidence that Petitioner poses a danger or flight risk. *See Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (ordering the government to provide a post-deprivation bond hearing, where the government bears the burden of proof, to § 1226(c) detainee); *Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022) (same); *Pham v. Becerra*, 717 F. Supp. 3d 877, 886 (N.D. Cal. 2024) (same).

## IV.    CONCLUSION

**IT IS HEREBY ORDRED** that Petitioner's Amended Petition for Habeas Relief, (ECF No. 7), is **GRANTED.**

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a constitutionally adequate bond hearing where the government bears the burden of establishing dangerousness or flight risk by clear or convincing evidence no later than **June 3, 2026.**

**IT IS FURTHER ORDERED** that if bond is granted, Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioner from detention.  Due to the difficulties other petitioners have faced in attempting to satisfy bond through ICE payment portals, **IT IS FURTHER ORDERED** that Petitioner must be afforded until **June 24, 2026,** to satisfy any monetary bond conditions.

**IT IS FURTHER ORDERED** that if a constitutionally adequate bond hearing is not conducted by **June 3, 2026**, Respondents must **IMMEDIATELY RELEASE** Petitioner from custody on his own recognizance.  Respondents are prohibited from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring,

without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

**IT IS FURTHER ORDERED** that Respondents are **permanently enjoined** from detaining Petitioner under 8 U.S.C. § 1225(b)(2)(A) or § 1226(c)(1)(E).

**IT IS FURTHER ORDERED** that the Parties must file a **joint status report** by **June 5, 2026**, that details whether the bond hearing occurred, whether bond was granted or denied, and, if denied, the reasons for that denial.  If bond was granted or the bond hearing has not occurred, the status report must confirm the date and time of Petitioner's release from detention in compliance with this Order.  If bond is denied, Federal Respondents must (1) attach that order of the immigration court to the joint status report, and (2) provide the contemporaneous record of the bond hearing to Petitioner's counsel immediately upon request.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 25(d), Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted or currently named Kristi Noem.  The Clerk of Court is kindly directed to update the docket as well as the case caption to reflect this substitution.

Counsel for Respondents are directed to immediately provide notice of this Order to the parties they represent.

///

///

///

///

///

///

The Clerk of Court is kindly directed to update the docket and case caption to reflect Petitioner's corrected name as included in the Amended Petition, (ECF No. 7).

The Clerk of Court is further directed to **SEAL** the Petition, (ECF Nos. 1-1, 4), and Motion for Appointment of Counsel, (ECF No. 1-2), due to the sensitive information contained therein.  The Clerk of Court is further directed to **FILE** the redacted versions of the Petition and Motion for Appointment of Counsel on the docket.

The Clerk of Court is further directed to enter judgment in favor of Petitioner.

**DATED** this ___27___ day of May, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court